UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JAMES E. RENTZ, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No. 5:16-CV-1645-CLS |
| J.P. MORGAN CHASE BANK, N.A., | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This case is before the court on defendant's motion to dismiss plaintiff's Second Amended Complaint.[1] Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). As the Supreme Court stated in *Iqbal*:

---

[1] Doc. no. 20. The Second Amended Complaint is doc. no. 17.

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [*Twombly*, 550 U.S., at 555]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557.

To survive a motion to dismiss founded upon Federal Rule of Civil Procedure 12(b)(6), [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.*, at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

Two working principles underlie our decision in *Twombly*. *First*, the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable to legal conclusions*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Second*, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it

2

has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While *legal conclusions* can provide the framework of a complaint, they must be supported by factual allegations. *When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.*

*Iqbal*, 556 U.S. at 678-79 (emphasis supplied, second and fourth alterations in original, other alterations supplied).

## I. ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

Plaintiff, James E. Rentz, is a retired veteran of the United States military.[2] Plaintiff and his then-wife, Elaine Josephine Rentz, entered into a Deed of Trust on real property they owned in Bell County, Texas ("the Bell County property"), in favor of McAfee Mortgage Corporation, on April 30, 2001.[3] Mr. and Mrs. Rentz satisfied their obligations under the Deed of Trust through July 6, 2005, when they divorced. The July 6, 2005 divorce decree provided that the Bell County property would be conveyed to Mrs. Rentz, subject to the outstanding obligation to McAfee Mortgage.[4] The divorce decree also required Mrs. Rentz "to liquidate any and all outstanding

---

[2] Doc. no. 17 (Second Amended Complaint), at ¶ 4.
[3] *Id.* at ¶ 5.
[4] *Id.* at ¶¶ 7-9.

sums due under the Deed of Trust outstanding at the time of the entry of the Court's decree . . . ."[5] Even so, Mr. Rentz "was not relieved of any obligation of debt on the subject property."[6] Pursuant to the divorce decree, Mr. Rentz executed a Special Warranty Deed on October 14, 2005, transferring all of his right, title, and interest in and to the Bell County property to Mrs. Rentz.[7]

On some unspecified date after October 14, 2005, McAfee Mortgage Corporation assigned its interest in the Deed of Trust securing the Bell County property to Washington Mutual.[8] On June 4, 2008, agents of Washington Mutual procured a "false affidavit of Military Status representing that Rentz was not an active duty member of the United States military."[9] In fact, plaintiff served as an active duty member of the United States military until May 31, 2010, when he retired.[10]

On some unspecified date, Mrs. Rentz defaulted on the obligation secured by the Deed of Trust.[11] On another unspecified date, she entered into a loan modification agreement with defendant JP Morgan Chase Bank, NA ("Chase").[12] Plaintiff did not

---

[5] *Id.* at ¶ 10.
[6] *Id.*
[7] *Id.* at ¶ 12.
[8] Doc. no. 17 (Second Amended Complaint), at ¶¶ 11, 14.
[9] *Id.* at ¶ 13.
[10] *Id.* at ¶ 16.
[11] *Id.* at ¶15.
[12] *Id.* at ¶ 18.

receive notice of the loan modification agreement, or of any action for foreclosure under the Deed of Trust, and no court order was entered to allow a foreclosure to proceed against plaintiff.[13] Even so, plaintiff does not allege that any foreclosure actually occurred.

Plaintiff alleges that he "has received false and incorrect Form 1099's issued by Chase, to he [*sic*] and his former wife, Josie, for [calendar] years 2012, 2013, 2014, 2015 and has every expectation of receiving a similar 1099 for 2016."[14] Additionally, plaintiff states that:

> 22. On or about March 12, 2012, the United States of America, by and through the United States Justice Department and 50 American States, filed an action against several Defendants for misconduct in their origination and servicing of single-family residential mortgages [*United States, et al. v. Bank of America Corp., et al.,* No. 12-CV-361 (D. D.C. March 12, 2012)]. Said claims were asserted against these companies, which included JP Morgan Chase and Company and JP Morgan Chase Bank N.A. This misconduct alleged violations of numerous Federal statutes including but not limited to wrongful conduct related to foreclosures as well as violations of the Servicemembers Civil Relief Act (SCRA), 50 U.S.C. app. § 501-597(b),[[15]] which included Defendant's failing to determine consistently and accurately the military status of borrowers in foreclosure, which resulted in a pattern and practice of violating servicemembers['] rights under the SCRA, including but not limited to:

---

[13] *Id.* at ¶¶ 17, 19-20, 27.

[14] Doc. no. 17 (Second Amended Complaint), at ¶ 21 (alterations supplied).

[15] Plaintiff incorrectly cites the statute. The SCRA is no longer found at "50 U.S.C. app. § 501-597(b)." Instead, it is codified at 50 U.S.C. §§ 3901-4042. Those statutory provisions are commonly referred to as SCRA sections 501-597, but for citation purposes, their current location in the United States Code should be used.

5

(a) foreclosure upon mortgage without required court orders on properties that were owned by servicemembers who, at the time, were on military service or otherwise protected by the SCRA.

(b) failing to file accurate affidavits stating that servicemembers who had not entered an appearance in a civil action involving a foreclosure, were at the time in military service or otherwise protected by SCRA, in violation of 50 U.S.C. app. § 521[16] as well as other claims of SCRA violations. Said assertions alleged that the Defendant institutions had made no waiver of rights under a separate agreement as provided for by SCRA 50 U.S.C. app. § 527,[17] and further that servicemembers affected by such wrongful conduct suffered damages and are aggrieved

---

[16] The statutory provision formerly found at 50 U.S.C. app. § 521 now is found at 50 U.S.C. § 3931. It requires that, before entering a default judgment against a defendant for failure to appear, a court

shall require the plaintiff to file with the court an affidavit –

(A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or

(B) if the plaintiff is unable to determine whether or not the defendant is in military service, stating that the plaintiff is unable to determine whether or not the defendant is in military service.

50 U.S.C. § 3931(b)(1).

[17] This does not appear to be the correct citation. The statutory provision formerly found at 50 U.S.C. app. § 527 now is found at 50 U.S.C. § 3937. It imposes limitations upon the interest rates that can be charged to servicemembers. It appears that plaintiff may have intended to reference 50 U.S.C. § 3918, which formerly was cited as 50 U.S.C. app. § 517. That section provides that a servicemember may waive any of the rights afforded by the SCRA. 50 U.S.C. § app. 517(a). A waiver that pertains to the modification, termination, or cancellation of a mortgage or deed of trust, or to the "repossession, retention, foreclosure, sale, forfeiture, or taking possession of property that" is secured by a mortgage or deed of trust, is only effective if "it is in writing and is executed as an instrument separate from the obligation or liability to which it applies." 50 U.S.C. app. § 517(a), (b).

6

persons under SCRA 50 U.S.C. app. § 517.[18] Said conduct [was] in violation and disregard of the rights of the affected servicemembers.

23. Under SCRA § 519,[19] a servicemember may be represented by an attorney acting on his behalf for purposes of the act and said act provided numerous protections of service members.

24. On or about April 4, 2012, named Defendants, including JP Morgan Chase and Company and JP Morgan Chase Bank, N.A., collectively as Defendants, entered into a consent agreement with the United States of America and the various attorney generals of the United

---

[18] Again, this does not appear to be the correct citation. As discussed in the previous footnote, the former 50 U.S.C. app. § 517 is now found at 50 U.S.C. § 3918, and it addresses a servicemember's waiver of rights under the SCRA. That provision does not mention "aggrieved persons." It appears that plaintiff may have intended to reference 50 U.S.C. § 4042, which formerly was cited as 50 U.S.C. app. § 597a. That provision states, in pertinent part, that "[a]ny person aggrieved by a violation of this chapter may in a civil action – (1) obtain any appropriate equitable or declaratory relief with respect to the violation; and (2) recover all other appropriate relief, including monetary damages." 50 U.S.C. § 4042(a) (alteration supplied). A person who prevails in action brought under that provision is entitled to recover costs and attorney fees. 50 U.S.C. § 4042(b).

[19] The statutory provision formerly found at 50 U.S.C. app. § 519 now is found at 50 U.S.C. § 3920. It states:

(a) Representative

A legal representative of a servicemember for purposes of this chapter is either of the following:

(1) An attorney acting on the behalf of a servicemember.

(2) An individual possessing a power of attorney.

(b) Application

Whenever the term "servicemember" is used in this chapter, such term shall be treated as including a reference to a legal representative of the servicemember.

50 U.S.C. § 3920.

States of America, consenting to a disposition of the issues raised in the Complaint, without trial or adjudication of any issue of law or fact and waived any appeal to the consent judgment entered and submitted by the parties. Under the terms of said agreement, Defendants agreed to make financial payments to the Plaintiffs and direct payments on behalf of certain identified consumers from funds that were escrowed for the purpose of the settlement agreement, including the sum of 1 billion, one hundred twenty-one million, one hundred eight-eight thousand, six hundred and sixty-one dollars ($1,121,188,661.00) as well as payments to foreclosed borrowers in the amount of one billion, four hundred eighty-nine million, eight hundred thirteen thousand, nine hundred and twenty-five dollars ($1,489,813,925.00) to allow a named administrator to make cash payments to borrowers who[se] homes were sold or taken in foreclosure during the period of January 1, 2008 through December 31, 2011. Further requirements included the sum of three billion, six hundred seventy-five million, four hundred thousand dollars ($3,675,400,000.00) in relief to consumers who met the eligibility criteria described under the terms and exhibits of the consent settlement and five hundred and thirty-seven million dollars ($537,000,000.00) in refinancing relief to consumers who met eligibility requirements in the forms and amounts described in Paragraph 9 of Exhibit D of the consent settlement.

25. The consent settlement agreement further provided that no cash payment or modification would be considered forgiveness of debt and therefore have no taxable effect upon the borrower.

Doc. no. 17 (Second Amended Complaint), at ¶¶ 22-25 (alterations supplied).

Plaintiff alleges that he "had no knowledge of the conduct of the Defendant and his former spouse, did not consent to said conduct, and has been damaged as a result thereof."[20] Additionally, plaintiff "has made numerous inquiries of the Defendant, in an effort to obtain information surrounding the issuance of the 1099s by the Defendant

---

[20] Doc. no. 17 (Second Amended Complaint), at ¶ 27.

and the Defendant has consistently refused to respond or explain the action of the parties arising from the modification agreement executed on or about December 3, 2012."[21] Finally, plaintiff alleges that he

> has received no documentation, communication or further explanation of the conduct of the parties and has been shown each year through the filings of the Defendant, to be receiving substantial compensation, both in violation of the consent agreement entered into in the previously referenced cause of action as well as incorrectly reflecting benefit to the Plaintiff for which he has been annually charged a taxable liability for the undisclosed conduct of the Defendant.

Doc. no. 17 (Second Amended Complaint), at ¶ 29.

> Based upon the foregoing factual allegations, plaintiff
>
> demands relief *under the right of action granted to him under 50 U.S.C. app. § 501* for the failure of compliance from the Defendant, the refusal to disclose the action of the [D]efendant and the former spouse of the plaintiff and the damages inuring to the Defendant to the Plaintiff [*sic*] by virtue of the violations of the consent agreement between the Justice Department and the Defendant as well as the incorrect tax reporting of compensation to the Plaintiff contrary to actual fact.

Doc. no. 17 (Second Amended Complaint), at 9 (emphasis and alteration supplied).

## II. DISCUSSION

### A.    Citation of the Appropriate Statutory Provision

Defendant first asserts that plaintiff failed to state a claim upon which relief can be granted because the code provision he cited in his demand for relief — "50 U.S.C.

---

[21] *Id.* at ¶ 28.

9

app. § 501" — "is merely the 'Short Title' of the statute and does not provide *any* cause of action."[22] In fact, there is no longer a provision that can be cited as "50 U.S.C. app. § 501." The first section of the SCRA is 50 U.S.C. § 3901 and, as defendant suggests, it is only the "Short Title" of the statute and states: "This chapter may be cited as the 'Servicemembers Civil Relief Act.'" 50 U.S.C. § 3901. Thus, none of the provisions actually cited in plaintiff's demand for relief provide an explicit cause of action. Even so, it is reasonable to construe plaintiff's complaint as alleging a claim under the SCRA, which *begins* at 50 U.S.C. § 3901, and which also encompasses 50 U.S.C. § 4042, providing, in pertinent part, that "[a]ny person aggrieved by a violation of this chapter may in a civil action — (1) obtain any appropriate equitable or declaratory relief with respect to the violation; and (2) recover all other appropriate relief, including monetary damages." 50 U.S.C. § 4042(a) (alteration supplied). Accordingly, plaintiff's complaint will not be dismissed on those grounds.

**B.    Sufficiency of Plaintiff's Allegations**

Defendant also asserts that plaintiff "cannot state a viable cause of action by merely citing to the SCRA generally[,] and stating in conclusory fashion that a

---

[22] Doc. no. 20 (Defendant's Motion to Dismiss Second Amended Complaint), at 2 (emphasis in original).

violation may have occurred."[23] For example, defendant asserts that plaintiff failed to allege "who (WaMu, FDIC-R, Chase, etc.) was required to provide him with 'notice' [of a potential foreclosure], who supposedly initiated foreclosure proceedings, or how he was damaged by a foreclosure that <u>never occurred</u> with respect to Property transferred to his former wife."[24] The court agrees that those failures render plaintiff's pleading deficient. There is no way to discern from the Second Amended Complaint, when — or even *whether* — foreclosure proceedings actually occurred, how plaintiff was damaged if the proceedings did occur, or how any potential damages might have been caused by the named defendant. Without knowing any of those facts, defendant cannot have a reasonable expectation of adequately defending against the allegations of plaintiff's Second Amended Complaint.[25]

Defendant also asserts that plaintiff failed to "plead why 'notice' [regarding the loan modification entered into between Chase and his former wife] was required, how

---

[23] *Id.* at 5 (alteration supplied).

[24] *Id.* (alteration supplied, emphasis in original).

[25] 50 U.S.C. § 3953 does not help plaintiff. That section requires court approval or agreement of the parties before a foreclosure, but *only if* the foreclosure relates to "an obligation on real or personal property owned by a servicemember that – (1) *originated before the period of the servicemember's military service* and for which the servicemember is still obligated; and (2) is secured by a mortgage, trust deed, or other security in the nature of a mortgage." 50 U.S.C. § 3953(a) (emphasis supplied). Here, plaintiff stated in his Second Amended Complaint that he "served in the active duty military, more specifically the United States Army, *during all times referenced herein*, until May 31, 2010." Doc. no. 17 (Second Amended Complaint), at ¶ 16 (emphasis supplied). Thus, plaintiff's Second Amended Complaint cannot plausibly be construed to allege that his obligation on the Deed of Trust for the Bell County property originated before he began his military service, as required by 50 U.S.C. § 3953(a).

he was damaged, or how the modification could possibly have given rise to [a] cognizable SCRA claim (or any other claim) against Chase."[26] Again, the court agrees that plaintiff's pleading is deficient. The court cannot discern from the allegations of the Second Amended Complaint any connection between the loan modification agreement and the SCRA.

Finally, defendant asserts that plaintiff failed to "plead any *facts* plausibly demonstrating that the Form 1099's are 'false,' the existence of any legal duty owed to him by Chase in connection with the Form 1099's, or what damages he has suffered due to the issuance of the Form 1099's."[27] The court agrees. Although it seems logically apparent that the damages plaintiff would have suffered from the incorrect issuance of any Form 1099's is increased tax liability, the court cannot discern from the allegations of the Second Amended Complaint exactly what was "false" about the Form 1099's that were issued, what Chase did wrong in issuing the 1099's, and why any falsifications by Chase should be considered a violation of the SCRA. Defendant cannot be expected to defend against such vague allegations.

## C. 1099 Claims

Defendant asserts that plaintiff's claims related to the allegedly false Form

---

[26] Doc. no. 20 (Defendant's Motion to Dismiss Second Amended Complaint), at 6 (alterations supplied).

[27] *Id.* (emphasis supplied).

1099's should be dismissed for the additional reason that he was not an active member of the military when those claims accrued. Indeed, plaintiff alleges that he began receiving "false and incorrect Form 1099's issued by Chase" in 2012,[28] but he only served on active duty in the military until May 31, 2010, at which point he presumably retired.[29] The SCRA only protects servicemembers who are on "active duty." 50 U.S.C. § 3911(2)(A)(i). Thus, even if plaintiff's claim related to the Form 1099's was otherwise cognizable, he could not pursue the claim under the SCRA because he was not on "active duty" when it accrued.

D. **Claims Related to the Consent Judgment Between Chase and the United States Department of Justice**

Defendant also asserts that any claims related to the April 4, 2012 consent judgment entered into between Chase (and other mortgage services that are not relevant to the current action) and the United States Department of Justice must fail. This court agrees. Although it is difficult to discern from the Second Amended Complaint, plaintiff appears to allege that defendant violated the terms of the consent judgment by failing to accurately determine his military status prior to foreclosure. As an initial matter, and as noted above, there is no indication in the pleadings that a foreclosure ever occurred, or that plaintiff was damaged in any way by it. Moreover,

---

[28] Doc. no. 17 (Second Amended Complaint), at ¶ 21.
[29] *Id.* at ¶ 16.

there is no indication that plaintiff is a party to the consent judgment, or that he has standing to enforce its terms. *See Harvin v. Nationwide Title Clearing*, 632 F. App'x 599, 601 n.1 (11th Cir. 2016) ("Harvin does not have standing as a third-party beneficiary under this settlement because members of the public are merely 'incidental' beneficiaries to government contracts intended to benefit the public, and have no right to sue to enforce the government's contract without clear intent to the contrary.") (citing *Interface Kanner, LLC v. JPMorgan Chase Bank*, 704 F.3d 927, 932-33 (11th Cir. 2013)).

### III. CONCLUSION

In accordance with the foregoing, it is ORDERED that defendant's motion to dismiss be, and the same hereby is, GRANTED, and all of plaintiff's claims are DISMISSED with prejudice. Costs are taxed to plaintiff. The Clerk is directed to close this file.

**DONE** and **ORDERED** this 13th day of April, 2017.

_____
United States District Judge